

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-8-1998

# United States v. Askari

Precedential or Non-Precedential:

Docket 95-1662

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"United States v. Askari" (1998). *1998 Decisions.* Paper 70.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/70

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Volume 1 of 2

Filed April 8, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 95-1662

UNITED STATES OF AMERICA

v.

MUHAMMAD ASKARI,
        Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 92-cr-00288)

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 6, 1996
Before: BECKER, McKEE and GARTH, Circuit Judges

Argued En Banc October 29, 1997
Before: BECKER, Chief Judge; SLOVITER,* STAPLETON,
MANSMANN, GREENBERG, SCIRICA, COWEN, NYGAARD,
ALITO, ROTH, LEWIS, McKEE, and GARTH,
Circuit Judges

(Filed April 8, 1998)

_____

*Judge Sloviter was Chief Judge of the Court of Appeals for the Third
Circuit at the time this appeal was argued. Judge Sloviter completed her
term as Chief Judge on January 31, 1998.

        DAVID L. McCOLGIN, ESQUIRE
        ROBERT EPSTEIN, ESQUIRE
          (ARGUED)
        Defender Association of Philadelphia
        Federal Court Division
        Lafayette Building, Suite 800
        437 Chestnut Street
        Philadelphia, Pennsylvania 19106-
          2414

          Attorneys for Appellant

        STEPHEN J. BRITT, ESQUIRE
          (ARGUED)
        Office of United States Attorney
        615 Chestnut Street, Suite 1250
        Philadelphia, Pennsylvania 19106

          Attorney for Appellee

OPINION OF THE COURT

SCIRICA, Circuit Judge.

This case involves an interpretation of the sentencing guidelines. The issue on appeal before the en banc court is the continuing vitality of our opinion in United States v. Rosen, 896 F.2d 789 (3d Cir. 1990), addressing S 5K2.13 of the United States Sentencing Commission, Guidelines Manual (Nov. 1997) which permits a downward departure based on diminished capacity where the crime is non-violent. The specific issue requires us to examine the meaning of "non-violent" offense under the sentencing guidelines.

Although resolution of this case would not necessarily compel reexamination of Rosen, much has been written by other courts of appeals since our decision eight years ago. The en banc court affords us the opportunity to revisit the issue and modify our views.

2

I.

A.

Muhammad Askari appeals his sentence for bank robbery under 18 U.S.C.A. S 2113(a) (West Supp. 1997), contending the district court should have granted him a downward departure for diminished capacity under USSG S 5K2.13 because (1) the unarmed bank robbery was non-violent and (2) he has a well-documented history of serious psychiatric illness.

Askari's mental illness at the time he committed the bank robbery is not at issue. Indeed, before sentencing, the district court found that Askari was not mentally competent and committed him, under 18 U.S.C. S 4244(d), to a federal institution for psychiatric care and treatment.[1] After the warden at the U.S. Medical Center for Federal Prisoners at Springfield, Missouri certified that Askari had recovered and was again mentally competent, the court sentenced him to 210 months in prison. (See App. at 58a, 68a).[2]

_____

1. Dr. Edward Guy examined Askari to assess whether he was competent to stand trial. Dr. Guy initially concluded that Askari was suffering from paranoid schizophrenia in partial remission, drug addiction, and seizure disorder, but he concluded that Askari was competent to stand trial. Following a second psychiatric evaluation before Askari's sentencing, Dr. Guy testified that Askari was not competent. Noting Askari's "history of serious mental illness," Dr. Guy found that Askari was too delusional to be able to cooperate with his attorney. The district court then ordered Askari's commitment. After two years of treatment at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri, Askari was diagnosed as suffering from "Schizophrenia, Paranoid Type currently in remission with antipsychotic medication." The report noted that Askari initially "exhibited delusional thinking and auditory hallucinations," which improved with medication. The report concluded that Askari was now competent. (See App. at 62a-67a, 68a).

2. Askari qualified as "a career offender in that he was at least 18 years old at the time of the instant offense, the instant offense [was] a felony involving violence and the defendant [had] at least two prior felony convictions for crimes of violence." Presentence Report P 33. (See App. at 56a (district court noting, during sentencing, Askari "has a long history of crime including violent crime . . . . the criminal history score in this case takes him pretty much to the top of the range" but concluding "[b]ecause I am satisfied that the low end of the sentencing range will provide a sufficient deterrent and punishment I am going to sentence him at the bottom of the range with the discretion I have")).

3

The facts regarding the bank robbery are not in dispute. On the afternoon of April 23, 1992, Askari entered the First Bank of Philadelphia at 1424 Walnut Street in Philadelphia. He approached a closed teller's window and said two or three times, "Put the money on the counter." Then, he went to an open window and told the bank teller, Ellen Ishizaki, "You have three seconds to give me the money." After Ishizaki gave him bait money, he ran out the door. Askari was not seen carrying a weapon, nor did he use force or make specific verbal threats of harm. When he demanded money from bank teller Ishizaki, however, he had his hand underneath his shirt. Two bank employees along with a Center City Special District employee chased Askari and caught him two blocks away. Police later found the bait money in Askari's pants. They did not recover a weapon. (See Presentence Report PP 5-8).

Askari was indicted for bank robbery, and, on July 10, 1992, was found guilty by a jury. At sentencing, defense counsel argued for a downward departure based on Askari's diminished mental capacity, citing his history of serious psychiatric illness and his diagnosis as a paranoid schizophrenic. The district court declined to grant the departure, explaining that the sentencing guidelines "contain a policy statement that a downward departure for diminished capacity is limited to non[-]violent offenses . . . . [the] commission says [there is] no downward departure for diminished capacity at the time of the offense, if the offense is a violent crime." (App. at 45a). The court also rejected defendant's motion for downward departure based on unusual, mitigating circumstances not adequately considered by the guidelines.3

_____

3. See USSG S 5K2.0, p.s. (permitting the imposition of a sentence outside the range established by the guideline "if the court finds `that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described' ").

B.

Askari appealed his sentence, contending the unarmed bank robbery was a non-violent offense because he did not use force or violence, or verbally threaten or harm anyone during the robbery. A panel of our court rejected Askari's arguments and affirmed the district court:

> In United States v. Rosen, 896 F.2d 789, 791 (3d Cir. 1990), we held that the district court did not have the authority in a bank robbery sentence to depart downward because that offense is not a `non-violent' offense. We so concluded by looking to a separate guidelines provision, [USSG] S 4B1.2, which defines robbery as a `crime of violence.' Although the circuits are split on this point, we are bound by our prior holding.

United States v. Askari, No. 95-1662, 1997 WL 92051, at *2 (3d Cir. Mar. 5, 1997), Order Vacating Opinion and Granting Rehearing En Banc, Mar. 27, 1997.

Nonetheless, we recognized disagreement among the courts of appeals whether the "crime of violence" definition contained in USSG S 4B1.24 governs the "non-violent" offense requirement of USSG S 5K2.13:

> Four other circuits have reached the same conclusion that this court reached in Rosen. United States v. Mayotte, 76 F.3d 887, 889 (8th Cir. 1996); United States v. Poff, 926 F.2d 588, 591-93 (7th Cir. 1991) (en banc) (6-5 decision); United States v. Maddalena, 893 F.2d 815, 819 (6th Cir. 1989); United States v. Borrayo, 898 F.2d 91, 94 (9th Cir. 1989). However, two circuits, following Judge Easterbrook's dissent in Poff, have concluded that the "non-violent

---

4. USSG S 4B1.1 enhances the offense level for "career offenders." See USSG S 4B1.1, comment. (backg'd.) (28 U.S.C.S 994(h) "mandates that the Commission assure that certain `career' offenders receive a sentence of imprisonment `at or near the maximum term authorized.' " USSG S 4B1.1 implements this directive by employing a definition of career offender that tracks in large part the criteria set forth in 28 U.S.C. S 994(h)). USSG S 4B1.2 provides definitions for terms used in USSG S 4B1.1, including "crime of violence."

offense" requirement of S 5K2.13 is not governed by the "crime of violence" definition contained inS 4B1.2. United States v. Weddle, 30 F.3d 532, 540 (4th Cir. 1994); United States v. Chatman, 986 F.2d 1446, 1450 (D.C. Cir. 1993).

Askari, 1997 WL 92051, at *2 n.2.

In a concurring opinion, Judge Becker, recognizing our controlling precedent in Rosen, suggested "that our decision in Rosen, that a downward departure is not available under S 5K2.13 of the sentencing guidelines in relation to a crime, the commission of which involves no violence in fact, is incorrect and should be reconsidered by the Court en banc." Askari, 1997 WL 92051, at *2 (Becker, J., concurring). According to Judge Becker:

> While `crimes of violence' and `non-violent offense' employ the same root word, the phrases `readily may take meanings other than as opposites.' More importantly, the distinct objectives of the two provisions at issue -- S 4B1.2 and S 5K2.13 -- counsel that the meaning of the former not govern that of the latter.

* * *

> In short, some factors at work in the departure sections of the Guidelines are in tension with those at work under the career offender sections, and it does not make sense to import a career offender-based definition of `crime of violence' into a departure section in the absence of specific cross-reference. Rather, it is better to permit the district courts to consider all the facts and circumstances surrounding the commission of a crime when deciding whether it qualifies as a non-violent offense under S 5K2.13.

Id. at *4-6 (citations omitted). We vacated our panel decision in Askari for reconsideration en banc.

II.

The able district judge, following our decision in United States v. Rosen, 896 F.2d 789 (3d Cir. 1990), determined

6

that he lacked authority to depart downward.5 We review for "abuse of discretion." See United States v. Sally, 116 F.3d 76, 78 (3d Cir. 1997). By definition, a district court "abuses its discretion when it makes an error of law. That a departure decision, in an occasional case, may call for a legal determination does not mean, as a consequence, that parts of the review must be labeled de novo while other parts are labeled an abuse of discretion." Koon v. United States, 116 S. Ct. 2035, 2047-48 (1996) (citations omitted). "The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." Id. at 2048.

III.

A.

1.

USSG S 5K2.13, a policy statement permitting downward departures,6 provides:

_____

5. See App. at 45a ("I cannot depart downward for diminished capacity at the time of the offense based on the guidelines as I read them. They at least contain a policy statement that a downward departure for diminished capacity is limited to non[-]violent offenses").

6. "The Guideline Manual contains three [types] of text: guidelines provisions, policy statements and commentary." United States v. Corrado, 53 F.3d 620, 624 (3d Cir. 1995). "When a crime is covered by the Sentencing Guidelines, the sentence is computed based not only on the relevant guidelines, but also on the Sentencing Commission's policy statements and commentary." United States v. Thompson, 70 F.3d 279, 281 (3d Cir. 1995) (per curiam) (citing United States v. Bertoli, 40 F.3d 1384, 1404-05 (3d Cir. 1994)).

The Supreme Court has stated "[t]he principle that the Guidelines Manual is binding on federal courts applies as well to policy statements." Stinson v. United States, 508 U.S. 36, 42 (1993). "Furthermore, where `a policy statement prohibits a district court from taking a specified action,
the statement is an authoritative guide to the meaning of the applicable guideline.' " Corrado, 53 F.3d at 624 (citing Williams v. United States, 503 U.S. 193, 201 (1992); United States v. Reilly, 33 F.3d 1396, 1424 n.1 (3d Cir. 1994)). See, e.g., United States v. Brannan, 74 F.3d 448, 454 n.9 (3d Cir. 1996) ("both the Policy Statements and the Commentary in the Sentencing Guidelines are binding on the federal courts") (citation omitted).

7

If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

USSG S 5K2.13, p.s. (emphasis supplied).

"Non-violent offense" is not defined in either USSG S 5K2.13 or the commentary.7 But the term "crime of violence" is defined in the "career offender" provisions of Chapter 4.8 USSG S 4B1.1 enhances the offense level for

_____

7. The sentencing guidelines describe departures:

The sentencing statute permits a court to depart from a guideline-specified sentence only when it finds `an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different than that described.' 18 U.S.C. S 3553(b). The Commission intends the sentencing courts to treat each guideline as carving out a `heartland,' a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

USSG Ch. 3, Pt. A, intro. comment.

8. Chapter 4 of the sentencing guidelines addresses criminal history:

The Comprehensive Crime Control Act sets forth four purposes of sentencing. (See 18 U.S.C. S 3553(a)(2).) A defendant's record of past criminal conduct is directly relevant to those purposes. A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence of criminal behavior will aggravate the need for punishment with each recurrence. To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered. Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation.

USSG Ch.4, Pt. A, intro. comment.

8

career offenders, and USSG S 4B1.2 provides definitions for terms used in USSG S 4B1.1, including "crime of violence":

> The term `crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG S 4B1.2(a).

An accompanying application note expands on this definition with concrete examples:

> `Crime of violence' includes murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as `crimes of violence' if (A) that offense has an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.
>
> `Crime of violence' does not include the offense of unlawful possession of a firearm by a felon.

USSG S 4B1.1, comment. (n.1) (emphasis supplied).9 If "non-violent" offense in USSG S 5K2.13 is defined by

_____

9. While USSG S 5K2.13 is a policy statement, the specific definitions of "crime of violence" that accompany USSG S 4B1.2 in the application notes are "commentary." See United States v. McQuilkin, 97 F.3d 723, 731 (3d Cir. 1996) ("Commentary in the guidelines is binding unless it runs afoul of the Constitution or a federal statute, or is plainly erroneous
or inconsistent with the section of the guidelines it purports to interpret") (citation omitted), cert. denied, 117 S. Ct. 2413 (1997).

reference to the term "crime of violence" in USSG S 4B1.2 and its commentary, then bank robbery would never qualify as a "non-violent" offense. If "non-violent" offense in USSG S 5K2.13 is defined by reference to the term "crime of violence" in USSG S 4B1.2 and its commentary, then bank robbery would never qualify as a "non-violent" offense.

The general application principles articulated in the Introduction to the sentencing guidelines supply a list of definitions "that are used frequently in the guidelines and are of general applicability (except to the extent expressly modified in respect to a particular guideline or policy statement)." USSG S 1B1.1, comment. (n.2). But, "non-violent offense" and "crime of violence" do not appear in this list of definitions. The Introduction also dictates that "[d]efinitions of terms also may appear in other sections. Such definitions are not designed for general applicability; therefore, their applicability to sections other than those expressly referenced must be determined on a case by case basis." USSG S 1B1.1, comment. (n.2).

2.

Askari was convicted of bank robbery in violation of 18 U.S.C.A. S 2113(a):

> [w]hoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the case, custody, control, management, or possession of, any bank, credit union, or any savings and loan association.

"The requirement that property be taken either `by force and violence' or `by intimidation' requires proof of force or threat of force as an element of the offense." United States v. Maddalena, 893 F.2d 815, 819 (6th Cir. 1989).

In determining whether intimidation is present, an objective standard is employed from the perspective of the victim, i.e., "whether `an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts.' " United States v. Woodrup, 86 F.3d

10

359, 363 (4th Cir.) (citations omitted), cert. denied, 117 S.
Ct. 332 (1996).

> As used in S 2113(a), the term `intimidation' means `to
> make fearful or put into fear.'
>
> The Government is not required to show either an
> `express verbal threat or threatening display of a
> weapon.' Actual fear need not be proven, if the acts of
> the defendant would threaten an ordinary reasonable
> person. Thus, the government need show only that an
> ordinary person in the teller's position would feel a
> threat of bodily harm from the perpetrator's acts.

United McCarty, 36 F.3d 1349, 1357 (5th Cir. 1994)
(citations omitted). See also Maddalena, 893 F.2d at 819
(same).

The district court sentenced Askari under USSG S 2B3.1
("Robbery, Extortion, Blackmail") which punishes, inter alia,
robbery of the property of a financial institution. USSG
S 2B3.1 does not define the term "non-violent" offense,
perhaps because the crime of robbery contemplates at least
some force, threat of force, or intimidation. While USSG
S 2B3.1 provides for a guideline increase if a death threat
was made, it is silent on the threat of bodily harm.10

_____

10. USSG S 2B3.1(b)(2)(F) calls for an increase of 2 levels "if a threat
of
death was made."

> `threat of death' . . . may be in the form of an oral or written
> statement, act, gesture, or combination thereof. Accordingly, the
> defendant does not have to state expressly his intent to kill the
> victim in order for the enhancement to apply. For example, an oral
> or written demand using words such as `Give me the money or I will
> kill you,' `Give me the money or I will pull the pin on the grenade
I
> have in my pocket,' `Give me the money or I will shoot you,' `Give
me
> the money or else (where the defendant draws his hand across his
> throat in a slashing motion),' or `Give me the money or you are
dead'
> would constitute a threat of death. The court should consider that
> the intent of this provision is to provide an increased offense
level
> for cases in which the offender(s) engaged in conduct that would
> instill in a reasonable person, who is a victim of the offense, a
fear
> of death.

USSG S 2B3.1, comment. (n.6).

11

B.

Against this backdrop we examine the conflict among
several courts of appeals interpreting "non-violent offense"
in USSG S 5K2.13. The discussion has centered on whether
a sentencing judge must categorically adopt the"crime of
violence" definition in USSG S 4B1.2 or whether the judge
has discretion to look to the facts and circumstances in
each case.

1.

In Rosen, the defendant pled guilty to sending a
threatening communication through the mail to extort
money through threat of injury, in violation of 18 U.S.C.
S 876. Defendant, an admitted compulsive gambler, wrote
checks from a home equity credit line to satisfy growing
gambling losses. Unable to make payment, he sent letters
to three acquaintances representing that, unless money
was received, their relatives would be harmed.

At sentencing, defendant presented expert testimony
about his compulsive gambling and argued that he neither
intended nor had the capability to carry out the threats
made in the letters. Sentencing the defendant under USSG
S 2B3.2 ("Extortion by Force or Threat of Injury or Serious
Damage"), the district court determined that defendant's
compulsive gambling did not constitute a mitigating factor
justifying departure below the guideline minimum.

On appeal, defendant contended, inter alia, the district
court incorrectly refused to apply USSG S 5K2.13 because
his crime was non-violent, i.e., it did not involve physical
force. We disagreed:

> Crimes of violence, however, include situations where
> force is threatened but not used. In other contexts,
> crimes of violence have been defined as offenses that
> have `as an element the use, attempted use, or
> threatened use of physical force.' 18 U.S.C. S 61 (1988)
> . . . see U.S.S.G. S 4B1.2, comment. (n.1). Defendant
> would have us conclude that S 5K2.13's use of the term
> `non-violent' means something other than the opposite
> of a crime of violence.

12

> We can find no support for such a contention and
> therefore find no error in the district court's
> determination that defendant's crime was not `non-
> violent.' See United States v. Borrayo, 898 F.2d 91 (9th
> Cir. 1989); cf. United States v. Poff, 723 F. Supp. 79
> (N.D. Ind. 1989). Consequently, guideline S 5K2.13
> does not authorize a downward departure for this
> defendant's mental condition.

Rosen, 896 F.2d at 791. We looked to the "crime of
violence" definition contained in USSG S 4B1.2 to determine
whether the defendant was entitled to a downward
departure in USSG S 5K2.13 for "non-violent offenses."
Because defendant's crime constituted a "crime of violence,"
we found USSG S 5K2.13 inapplicable.

As recently as this year, we have cited Rosen. See United
States v. McBroom, 124 F.3d 533, 542 (3d Cir. 1997) ("The
basis for our holding in Rosen was that the definition of
`crime of violence' contained in section 4B1.2, which is the
career offender provision, governs the meaning of`non-
violent' offense in section 5K2.13 . . . . we are[bound] by
our decision in Rosen, 3d Cir. I.O.P. 9.1").

2.

As we have noted, the question of whether "non-violent
offense" in USSG S 5K2.13 may be defined by reference to
"crime of violence" in USSG S 4B1.2 has been answered
differently by the different courts of appeals. Five other
circuits are in accord with Rosen. See United States v.
Mayotte, 76 F.3d 887, 889 (8th Cir. 1996) ("The phrase
`non-violent offense' is not defined in the guidelines.
However, the term `crime of violence' is defined in Section
4B1.2 of the sentencing guidelines. We believe that a `non-
violent offense' necessarily excludes `crime of violence' ");
United States v. Dailey, 24 F.3d 1323, 1327 (11th Cir.
1994) ("downward departure was not permissible for
reduced mental capacity under U.S.S.G. S 5K2.13 after
Dailey was convicted of a `crime of violence' "); United States
v. Cantu, 12 F.3d 1506, 1513 (9th Cir. 1993) ("We have
defined `non-violent' as the converse of a `crime of violence'
under U.S.S.G. S 4B1.2(1)(I)"); United States v. Maddalena,

13

893 F.2d 815, 819 (6th Cir. 1989) ("the commentary to section 4B1.2 of the guidelines includes robbery as an offense covered by the provision . . . . Thus section 5K2.13 is not applicable to defendant, for he did not commit a non-violent offense"); United States v. Poff, 926 F.2d 588, 591 (7th Cir. 1990) ("We decline to adopt [the defendant's] argument that rests on the premise that the Guidelines define the same act as both a `crime of violence' and a `non-violent' offense") (citation omitted) (en banc) (6-5 decision), cert. denied, 502 U.S. 827 (1991).

Two courts of appeals have embraced the view that the district court's discretion to depart downward under USSG S 5K2.13 should not be restricted by USSG S 4B1.2. See United States v. Weddle, 30 F.3d 532, 540 (4th Cir. 1994) ("the Sentencing Commission did not intend to import [the `crime of violence' definition] from [USSG S 4B1.2 to USSG S 5K2.13]"). See also United States v. Morin, 124 F.3d 649, 653 (4th Cir. 1997) ("Although a definition of crimes of violence is found elsewhere in the guidelines, we have held that the definition of `crime of violence' in S 4B1.2 of the sentencing guidelines (regarding career offenders) is not applicable to S 5K2.13 and its reference to`non-violent' offense"); United States v. Chatman, 986 F.2d 1446, 1450 (D.C. Cir. 1993) ("we are not persuaded that section 4B1.2 should govern the application of section 5K2.13. Rather, we believe that the sentencing court has broad discretion under section 5K2.13 to examine all the facts and circumstances of a case to determine whether a particular offense was in fact `non-violent' ").

In addition, five dissenting judges in the Poff decision share the same view. Poff, 926 F.2d at 595 ("different terms in a carefully drafted code such as the guidelines connote different things . . . `non-violent' offense refers to crimes that in the event did not entail violence. When prison is not justified by the need to incapacitate the defendant, S 5K2.13 is available") (Easterbrook, J., dissenting). Review of Poff and Chatman illustrates the distinctions. See Weddle, 30 F.3d at 538 ("The Seventh Circuit's Poff decision and the D.C. Circuit's Chatman decision provide the only detailed analyses of the issue presented").

14

3.

The Poff majority provides an elaborate argument in favor
of the first view -- that USSG S 4B1.2's "crime of violence"
definition controls USSG S 5K2.13's "non-violent offense"
requirement. First, the Poff majority emphasized the
similarity between the two phrases:

>  Courts often say that the choice of different words
>  reflects an intent to say something different. But here
>  the Commission used the same word -- `violence.'
>  True, in one case it used a negative construction--
>  `non-violent' -- and in the other case used a
>  prepositional phrase containing the noun `violence' as
>  a modifier rather than using the simpler adjective
>  `violent' -- but the root, and meaning, are the same in
>  both cases . . . . The Guidelines should be read as a
>  whole, S 1B1.1(I), and when the same word appears in
>  different, though related sections, that word likely
>  bears the same meaning in both instances.

Poff, 926 F.2d at 591 (citations omitted).

The Poff majority then looked to the Armed Career
Offender provision of 18 U.S.C.A. S 924(e)(2)(B)(I) (West
Supp. 1997) where Congress defined "violent felony" to
include any crime that, inter alia, "has as an element of the
use, attempted use, or threatened use of physical force
against another," believing that definition mirrored USSG
S 4B1.2's "crime of violence." The Poff majority reasoned:
"[i]f it is difficult to discern a difference between `violent
offense' and `crime of violence,' it is well nigh impossible to
divine any distinction between a `violent felony' and a
`violent offense.' " Id. at 592.

According to the Poff majority, if the Sentencing
Commission wanted to differentiate between different types
of violence, it would have expressly included an alternative
definition in USSG S 5K2.13:

>  We think it likely that had the Commission desired to
>  distinguish among types of violence, it would have
>  expanded its vocabulary. At a minimum, it would have
>  offered a technical definition for each term. Perhaps a
>  cross-reference between the two sections would have

15

eliminated any possibility of confusion, but hindsight is a demanding critic. It is hardly surprising that the Commission failed to foresee the argument that a crime of violence can, under the same sentencing scheme, also be a non-violent offense.

* * *

Even if we believed that the Commission intended to define violence differently in S 5K2.13, we could do little but guess as to its meaning.

Id. at 592 (citations omitted).

Looking to the underlying objectives of the two provisions at issue, the Poff majority stated:

The Guidelines reflect the view that those who have a history of crimes of violence merit increased incarceration, and include those, like appellant, who have threatened violence in that category of defendants. In addition to limiting the authority of courts to decrease the sentences of defendants with reduced mental capacity to cases in which the defendant committed a non-violent offense, S 5K2.13 further circumscribed the authority of courts to depart on this basis by adding the proviso that `the defendant's criminal history does not indicate a need for incarceration to protect the public.' Career offenders, by definition, fail to meet this condition . . . . So even if the terms `non-violent offense' and`crime of violence' were not mutually exclusive, S 5K2.13 would not have authorized the district court to depart.

* * *

Because those suffering mental incapacities are effectively less deterrable (making the need for incapacitation greater), it would not be unreasonable to assume that the Commission believed departures to be warranted only when there is little prospect that such a defendant will manifest any form of violent behavior. That this reading would not subvert the purpose of S 4B1.1 is a point that further commends it.

Id. at 592-93 (citations omitted). The Poff majority view still holds in the United States Court of Appeals for the Seventh

16

Circuit. See United States v. Sullivan, 75 F.3d 297, 300 (7th Cir. 1996) ("this panel is bound by the en banc decision in Poff and thus we affirm the district court's denial of a downward departure under S 5K2.13").

4.

The arguments of the Poff majority were countered by Judge Easterbrook, who authored the dissenting opinion. Both Chatman from the Court of Appeals for the District of Columbia Circuit and Weddle from the Court of Appeals for the Fourth Circuit adopted and expanded upon the rationale articulated in the Poff dissent. We outline the principal arguments set forth by the Poff dissent and the Chatman and Weddle decisions here.

Starting with the text of USSG S 5K2.13, these decisions note that "[n]othing in the Guidelines themselves or in the Application Notes suggests that section 4B1.2 is meant to control the interpretation and application of section 5K2.13." Chatman, 986 F.2d at 1450. The omission from USSG S 5K2.13 of either the phrase "crime of violence" or a cross-reference was intentional:

> It would have been easy to write S 5K2.13 to say that the judge may depart unless the defendant committed a `crime of violence' as S 4B1.2 defines it; instead, the Commission selected different formulations. Although it laid out a detailed meaning for `crime of violence' in S 4B1.2, it did not provide so much as a cross-reference in S 5K2.13, a curious omission if the Commission meant to link these phrases so tightly that they are mutually exclusive.

Poff, 926 F.2d at 594 (Easterbrook, J., dissenting). See Chatman, 986 F.2d at 1450 ("The lack of a cross-reference is all the more significant because so many of the Guidelines use explicit cross-referencing").

While the sentencing guidelines have been frequently amended, these decisions observe that the Sentencing Commission has never altered USSG S 5K2.13 to specifically incorporate the "crime of violence" definition. See Chatman, 986 F.2d at 1450 ("Moreover, the

17

Commission has amended section 4B1.2 and its commentary twice in the last two years, and neither time did the Commission suggest any relationship between section 5K2.13 and section 4B1.2") (citing Poff, 926 F.2d at 594 (Easterbrook, J., dissenting)).

Despite the common root word shared by "crime of violence" and "non-violent offense," the phrases may take meanings other than as opposites:

> As the Commission was at pains to establish in S 4B1.2, whether a crime is one `of violence' depends on its elements and not on the defendant's conduct, so that an unrealized prospect of violence makes the crime one of violence. This is an abnormal sense, a term of art. It took a detailed definition to make it so. Then comes S 5K2.13, in which `non-violent offense' appears without elaboration or cross reference. Best to read these words in their ordinary sense rather than as tied to the term of art in S 4B1.2. A `non-violent offense' in ordinary legal (and lay) understanding is one in which mayhem did not occur. The prospect of violence . . . sets the presumptive range; when things turn out better than they might, departure is permissible.

Poff, 926 F.2d at 594 (Easterbrook, J., dissenting).

Furthermore, these sections address different concerns. USSG S 4B1.1 prescribes a formula to determine whether a defendant is a "career offender" who warrants increased incarceration because of an extensive criminal history.

> In section 994(h), Congress directed the Commission to ensure that the Guidelines specify prison sentences that are `at or near the maximum term authorized' for `career offenders,' which include those who have `been convicted of a felony that is either a crime of violence or a drug offense and who have been previously convicted of two felonies where each has either a crime of violence or a drug offense.' Longer sentences for such offenders are justified by the purposes of incarceration, as set out in 18 U.S.C. S 3553(a)(2) . . . . [They] guarantee incapacitation of those repeat offenders whose past records suggest a propensity to commit violent crimes.

18

> Reflecting these policy concerns, the definition of `crime of violence' in section 4B1.2 is distinctively a `term of art' designed to identify career offenders . . . . section 4B1.2 appears to characterize as `crimes of violence' many offenses that, taken individually on their facts, might be interpreted as non-violent.

Chatman, 986 F.2d at 1451 (citations omitted). By contrast, USSG S 5K2.13 encourages more lenient treatment:

> the policy concerns that motivate the definition of `crime of violence' in section 4B1.2 are not applicable to section 5K2.13 . . . . [the purpose of which] is to treat with lenity those individuals whose `reduced mental capacity' contributed to the commission of a crime.

* * *

> Considered in this context, the term `non-violent offense' in section 5K2.13 refers to those offenses that, in the act, reveal that a defendant is not dangerous, and therefore need not be incapacitated for the period of time the Guidelines would otherwise recommend.

Chatman, 986 F.2d at 1451-52 (citations omitted). See Weddle, 30 F.3d at 540 ("U.S.S.G. S 5K2.13 is intended to create lenity for those who cannot control their actions but are actually dangerous; U.S.S.G. S 4B1.2 is intended to treat harshly the career criminal, whether or not their actual crime is in fact violent"); Poff, 926 F.2d at 595 ("A hefty sentence may be appropriate simply because it incapacitates and so reduces the likelihood of further offenses. When the described person's conduct is non-violent, however, incapacitation is less important .. . . Because legal sanctions are less effective with persons suffering from mental abnormalities, a system of punishment based on deterrence also curtails sanction") (Easterbrook, J., dissenting).

This approach allows the district judge to make a fact-specific inquiry not governed by the "crime of violence" definition of USSG S 4B1.2. See Chatman, 986 F.2d at 1450 ("we are not persuaded that section 4B1.2 should govern the application of section 5K2.13. Rather . . . the sentencing court has broad discretion under section 5K2.13

19

to examine all the facts and circumstances of a case to determine whether a particular offense was in fact `non-violent' ").11

C.

As noted, the en banc court enables us to examine again the language, structure, and purpose of the sentencing guidelines and to appraise again the definition of "non-violent offense" in USSG S 5K2.13. Although our initial view set forth in Rosen was a reasoned interpretation that now represents the view of most courts of appeals, we now believe the analysis of the relationship between USSG S 5K2.13 and USSG S 4B1.2 articulated by the dissent in Poff and later developed in Chatman and Weddle is more convincing.

Without detailing those arguments already set forth, we find especially compelling the following observations. First, USSG S 5K2.13 contains no cross-reference to USSG S 4B1.2's definition of "crime of violence." Even though the Sentencing Commission has amended the sentencing guidelines over five-hundred times in the last nine years, it has made no cross-reference in USSG S 5K2.13 linking "non-violent offense" to the "crime of violence" definition in S 4B1.2.

Second, by limiting USSG S 5K2.13 to those defendants whose "criminal history does not indicate a need for incarceration to protect the public," the Sentencing Commission removed the USSG S 5K2.13 departure from the reach of "career offenders." Having done so, it makes little sense to import a definition of "non-violent offense" from the section on career offenders.

Third, USSG S 1B1.1 articulates a list of definitions of general applicability which includes neither "crime of violence" nor "non-violent" offense. That provision specifies: "[d]efinitions . . . [which] appear in other sections . . . . are not designated for general applicability; therefore their applicability to sections other than those expressly

_____

11. Judge Stapleton's elaboration in his concurrence on the differences between the Poff dissent and Chatman is instructive.

referenced must be determined on a case by case basis."
USSG S 1B1.1, comment. (n.2). USSG S 4B1.2's "crime of
violence" definition is therefore one of limited applicability.

Fourth, USSG S 4B1.1 and USSG S 5K2.13 address
different policy concerns. While USSG S 4B1.1 increases
sentences for persons whose criminal records suggest a
propensity to commit violent crimes, USSG S 5K2.13
encourages more lenient treatment for persons who are not
actually dangerous but whose reduced mental capacity
contributed to the commission of a crime.

In short, the choice of different phrasing, the absence of
a cross-reference, and the explicit definitions attached to
one section but not the other, all suggest that the
Sentencing Commission did not intend to import the "crime
of violence" definition from USSG S 4B1.2 to USSG
S 5K2.13. Of course the Sentencing Commission could
adopt a definition of "non-violent offense" which, if in
conformity with the statute, could be binding on the district
judge. Or it could delete the reference to "non-violent
offense" in USSG S 5K2.13. But in the absence of some
direction from the Sentencing Commission, we are
unwilling to apply the "crime of violence" definition
articulated in USSG S 4B1.2 to USSG S 5K2.13.

Although we find convincing many of the arguments put
forth in the Poff dissent, Chatman, and Weddle, we take a
somewhat different view of the applicable standard. Those
cases direct the district judge applying USSG S 5K2.13 to
make a fact specific inquiry whether a defendant has
committed a "non-violent offense." The question remains
whether there is anything that constrains the district
court's review of the "facts and circumstances" of the crime.

D.

In modern criminology, there has always been a
distinction between culpability and sanction, between
finding guilt and imposing sentence. Until recently,
sentencing had been the courts' unique role. Before the
advent of mandatory sentences and sentencing guidelines,
courts routinely looked to all the facts and circumstances
before passing sentence. Indeed, the severe effects of a

21

"borderline" conviction were often mitigated by a lenient sentence.

But the Sentencing Reform Act brought with it significant changes. Since adoption of the sentencing guidelines, the fact of conviction, whatever the nature or character of the crime, has carried concrete and sometimes rigid sanctions (even un-convicted conduct can now be punished as relevant conduct). Through the means of downward departures (which is what concerns us here), the Sentencing Commission has attempted to ameliorate the consequences of certain kinds of convictions. This is difficult to do, especially when it involves pinpointing behavior in an almost infinite spectrum and affixing quantitative values. But whether the existing guideline structure can permit the Sentencing Commission to fashion a just downward departure in every case where it is appropriate, it is clear that the Sentencing Commission did not intend to allow departures in USSG S 5K2.13 for offenders who may be dangerous to the public.

We agree that the district court should look at all the facts and circumstances of the crime, but it should do so within the context of the Sentencing Reform Act and the underlying statute defining criminal culpability. Because the sentencing guidelines offer no "guidance" on how to define "non-violent offense," we are led back to the enabling statute, the Sentencing Reform Act,12 and its articulation of the factors to be considered in imposing sentence.13 Of

_____

12. 18 U.S.C. S 3553(b) provides, in part:

> (b) Application of guidelines in imposing a sentence  . . . . In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship

of

> the sentence imposed to the sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

18 U.S.C.A. S 3553(b) (West 1985 & Supp. 1997).

13. The general factors articulated in 18 U.S.C.S 3553(a) provide, in part:

particular interest here, when trying to define "non-violent offense," is the need for the sentence imposed to reflect the seriousness of the offense, to protect the public, and to provide just punishment.

To assess the seriousness of the offense,14 we look to the elements of the crime and the surrounding conduct. Bank robbery, the underlying offense here, consists of taking, or attempting to take, anything of value, by force and violence, by intimidation, or by extortion.15 The requirement that the

_____

> (a) Factors to be considered in imposing a sentence.-- The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.

* * *

> (2) the need for the sentence imposed --

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C.A. S 3553(a). It appears that, in a specific sense, these factors have been largely supplanted by the sentencing guidelines.

14. " `Offense' means the offense of conviction and all relevant conduct under S 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." USSGS 1B1.1, comment. (n.1).

15. 18 U.S.C.A. S 2113(a) provides:

> [w]hoever, by force and violence, or by intimidation, takes, or
> attempts to take, from the person or presence of another, or obtains
> or attempts to obtain by extortion any property or money or any
> other thing of value belonging to, or in the case, custody, control,
> management, or possession of, any bank, credit union, or any
> savings and loan association.

The second paragraph of this section, which is not applicable here,

provides:

property be taken either "by force and violence" or "by intimidation" requires proof of force or threat of force as an element of the offense. Maddalena, 893 F.2d at 819. The term "intimidation" means to make fearful or put into fear. McCarty, 36 F.3d at 1357. In determining whether intimidation is present, the question is whether an ordinary person in the victim's position reasonably could infer a threat of bodily harm from the defendant's acts. Id. "The term `extortion' as used in 18 U.S.C. 2113(a) means obtaining property from another person, without the other person's consent, induced by the wrongful use of actual or threatened force, violence, or fear."16  If there is no taking by

_____

> Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with the intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof,
> so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny --

> Shall be fined under this title or imprisoned not more than twenty years, or both.

Id.

16. H.Rep. No. 99-797, at 33, reprinted in 1986 U.S.C.C.A.N. 6138, 6156. See also 18 U.S.C.A. S 1951(b)(2) (West 1984 & Supp. 1997) (the Hobbs Act)(extortion means "obtaining of property from another, with [their] consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right"). Both the Hobbs Act and 18 U.S.C. S 2113(a) punish extortion. The provisions, however, focus on different concerns. See United States v. Maldonado-Rivera, 922 F.2d 934, 983 (2d Cir. 1990) ("In enacting S 1951, Congress' principal concern was protecting the flow of interstate commerce . . . . In contrast, in enacting
S 2113, Congress's principal concern was tofind a means of protecting the institutions in which the Federal Government is interested") (citations omitted), cert. denied, 501 U.S. 1211 (1991).

In 1986 Congress amended S 2113(a) to expressly cover extortion directed at federal insured banks and make it the"exclusive provision for prosecuting bank extortion." H.Rep. No. 99-797, at 33, reprinted in 1986 U.S.C.C.A.N. 6138, 6156. The Committee Report stated that extortionate conduct had been prosecutable under either the [18 U.S.C. S 2113(a)] or

extortion, actual or threatened force, violence, or intimidation, there can be no valid conviction for bank robbery under 18 U.S.C. S 2113(a). In that case, there could be a conviction under 18 U.S.C. S 2113(b) (theft without threat of force). It would seem, therefore, that with bank robbery convictions under the first paragraph of 18 U.S.C. S 2113(a), a defendant could not qualify for a departure under USSG S 5K2.13 as presently written. Of course, this refers to convictions only under the first paragraph of S 2113(a). The second paragraph of that section describes entering, or attempting to enter, a bank with intent to commit a felony therein. The second paragraph does not necessarily describe a crime of violence; that would depend on the felony.17

There also may be other cases of bank robbery where USSG S 5K2.13 might apply. Conceivably, a defendant could commit a bank robbery by extortion under the Hobbs Act (18 U.S.C. S 1951(b)(2)) involving neither intimidation,

_____

the Hobbs Act, and concluded that clarification as to which should be the applicable statute is desirable. Id.

The guidelines make a distinction between "Extortion by Force or Threat of Injury or Serious Damage," USSG S 2B3.2, and "Blackmail and Similar Forms of Extortion," USSG S 2B3.3. The latter applies "only to blackmail and similar forms of extortion where there clearly is no threat of violence to person or property." USSG S 2B3.3, comment. (n.1).

17. See United States v. Selfa, 918 F.2d 749, 752 n.2 (9th Cir. 1990) ("The second paragraph [of S 2113(a)] describes an entry or attempt to enter a bank with intent to commit a felony in it. The second paragraph does not describe a crime of violence"), cert. denied, 498 U.S. 986 (1990); United States v. Pick, 724 F.2d 297, 301 (2d Cir. 1983) ("Section 2113(a) prohibits entry of a bank with the intent to commit `any' felony [including mail fraud] and in no way limits its application to robberies, burglaries, or felonies not covered under other sections of the Act"); United States v. Brown, 547 F.2d 36, 39 (3d Cir. 1976) (Felonious intent is not "made part of the crimes of taking by force and violence or by intimidation ([subsection] a-first paragraph)") (emphasis supplied), cert. denied, 431 U.S. 905 (1977); Williams v. United States, 301 F.2d 276, 277 (7th Cir. 1962) (With respect to the second paragraph of S 2113(a), the "intent of Congress was to make any unlawful entry or attempted entry of a bank, regardless of its current state of habitation, a federal crime").

actual violence, nor the threat of violence. Extortion by an official acting under color of right could be a "non-violent offense." See, e.g., United States v. Adair, 951 F.2d 316, 318 (11th Cir. 1992) ("In a Hobbs Act prosecution of a public official, the government need not prove actual or threatened force, violence or duress because `the coercive element is supplied by the existence of the public office itself ' ") (citing United States v. Williams, 621 F.2d 123, 124 (5th Cir. 1980), cert. denied, 450 U.S. 919 (1981)); United States v. Billups, 692 F.2d 320, 330 (4th Cir. 1982) (Fear of economic harm will sustain a Hobbs Act violation. "The fear need not be the consequence of a direct or implicit threat by the defendant, and the government's burden of proof is satisfied if it shows that the victim feared economic harm and that the circumstances surrounding the alleged extortionate conduct rendered that fear reasonable") (citations omitted), cert. denied, 464 U.S. 820 (1983); United States v. Cerilli, 603 F.2d 415, 425 (3d Cir. 1979) ("where extortion under color of official right is charged, one need not prove that the payment was obtained by force, fear or duress"), cert. denied, 444 U.S. 1043 (1980).

We believe that departures under USSG S 5K2.13 exclude conduct that involves actual force, threat of force, or intimidation, the latter two measured under a reasonable person standard. Therefore, "non-violent offenses" under USSG S 5K2.13 are those which do not involve a reasonable perception that force against persons may be used in committing the offense.

Although conviction and sentencing are separate, sentencing has always been tied to the crime of conviction at least in the sense that they must be congruent. If the elements of the crime require a finding of violent conduct, then a valid conviction could hardly permit a sentence based on a finding of non-violent conduct. So long as the bank robbery victim has been threatened with harm, and is seen to have been threatened under an objective standard (reasonable person), the defendant cannot be found to have acted in a non-violent manner.

Nonetheless, it may be argued that conduct may be violent (as defined by statute) but still warrant a more lenient sentence if committed by a defendant with

26

diminished mental capacity who is not dangerous to the public (as defined by his criminal history). This may be so, especially where violence is threatened, but the threat is not realized. To put it differently, does the term "non-violent offense" in USSG S 5K2.13 include acts resulting in valid convictions under 18 U.S.C.A. S 2113(a) where the threat of violence was never carried out? Under the current guidelines, we think the answer is yes for the reasons expressed by us and by Judge Stapleton in his thoughtful concurrence.[18]

E.

In this case, Askari was found guilty of bank robbery. The bank teller, Ellen Ishizaki, described the robbery as follows:

> The fellow came up to the middle window and he asked us to put our money up on the counter . . . . [H]e said the same thing again. At that point I pressed the alarm button, the silent alarm. He then pushed his way over to my window, asked me for the money and then he, you know, and I still hesitated and then finally he told me I had three seconds to give him my money. And then I gave him my money . . . . [I was scared] [b]ecause he had his hand in his shirt and I didn't know if he was going to pull a gun out on me or a knife or, you know, at that point I was, you know, scared.

(App. at 14a). The bank teller, when told that she had three seconds to hand over the money by someone who had his hand in his shirt, was fearful. An ordinary person in the bank teller's position reasonably could infer a threat of bodily harm from Askari's demand and actions. Looking at the elements of the crime and the surrounding conduct, Askari did not commit a "non-violent offense."

---

18. Nevertheless, there appears to be no impediment to the Sentencing Commission's drawing this distinction. For purposes of sentencing, the Sentencing Commission could delete the "non-violent offense" requirement from USSG S 5K2.13. Or, it could condition application of USSG S 5K2.13 on an unrealized threat of violence. But under the current guidelines, we believe no distinction presently exists.

27

Askari was sentenced as a "career offender." (Presentence Report P 33). USSG S 5K2.13 applies only if Askari's criminal history does not indicate a need for incarceration to protect the public. Even if this bank robbery were classified as a non-violent offense, Askari may still not have qualified for a USSG S 5K2.13 departure. Askari's criminal history contains other violent crimes, including two armed bank robberies, suggesting his incapacitation may be necessary. (See App. at 56a (district court noting "[t]he Defendant . . . has a long history of crime, including violent crime . . . . the criminal history score in this case takes him pretty much to the top of the range"); Presentence Report PP 18-32).19

F.

Accordingly, we hold Askari could not qualify for departure under USSG S 5K2.13 because he did not commit a "non-violent offense."

We will affirm the judgment of conviction and sentence.
_____

19. Askari's criminal convictions include (1) bank robbery at gunpoint (1974); (2) robbery at gunpoint and violation of the Uniform Firearms Act (1980); (3) theft (1982); and (4) possession of a firearm by a convicted felon (1983). (See Presentence Report PP 29-32).