

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-5-1998

# United States v. Askari

Precedential or Non-Precedential:

Docket 95-1662

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

## Recommended Citation

"United States v. Askari" (1998). *1998 Decisions.* Paper 256.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/256

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 5, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 95-1662

UNITED STATES OF AMERICA

v.

MUHAMMAD ASKARI,
        Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 92-cr-00288)

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 6, 1996

Before: BECKER, McKEE and GARTH, Circuit Judges

Argued En Banc October 29, 1997

Before: SLOVITER, Chief Judge, BECKER, STAPLETON,
MANSMANN, GREENBERG, SCIRICA, COWEN, NYGAARD,
ALITO, ROTH, LEWIS, McKEE and GARTH, Circuit Judges

(Filed: April 8, 1998)

SUBMITTED SUR PETITION FOR
RECONSIDERATION OF EN BANC OPINION
Pursuant to Third Circuit LAR 34.1(a)
(October 5, 1998)

Present: BECKER, Chief Judge, SLOVITER, STAPLETON, GREENBERG, SCIRICA, NYGAARD, ALITO, ROTH, LEWIS, McKEE, GARTH and COWEN,* Circuit Judges.

(Filed November 5, 1998)

          DAVID L. McCOLGIN, ESQUIRE
          ROBERT EPSTEIN, ESQUIRE
          Defender Association of Philadelphia
          Federal Court Division
          Lafayette Building, Suite 800
          437 Chestnut Street
          Philadelphia, Pennsylvania 19106-
          2414

           Attorneys for Appellant

          STEPHEN J. BRITT, ESQUIRE
          Office of United States Attorney
          615 Chestnut Street, Suite 1250
          Philadelphia, Pennsylvania 19106

           Attorney for Appellee

OPINION OF THE COURT SUR PETITION FOR RECONSIDERATION OF EN BANC OPINION

BECKER, Chief Judge.

This opinion is prompted by an unusual concatenation of circumstances: (1) the United States Sentencing Commission adopted an amendment to the Sentencing Guidelines rendering more flexible the circumstances under which a sentencing court can make a downward departure when a defendant convicted of certain kinds of offenses has been shown to possess significantly reduced mental capacity at the time of the offense; (2) this court, sitting en banc, filed an opinion one day before adoption of the Guideline amendment rejecting the interpretation that the Guideline amendment suddenly recognized; and (3) because

_____

*Judge Mansmann sat on the original en banc panel but has been unable to participate in this decision due to illness.

2

the amendment is a "clarifying" amendment which, under our jurisprudence, applies to pending cases, it becomes possible that the defendant, who sought relief from our decision before our mandate was issued and who clearly had significantly reduced mental capacity at the time of the offense, could receive a lesser sentence than that which the district court imposed and which the en banc court of appeals affirmed.

Shortly after we filed our opinion, and when the terms of the newly-adopted Guideline amendment became known, defendant Muhammad Askari sought reconsideration of our en banc decision. We granted the motion. We now vacate the en banc opinion and remand the case to the district court so that it may reconsider the sentence in light of the Guidelines amendment, and, in particular, make findings or draw legal conclusions in the first instance about the two facts that will likely determine whether Askari's sentence will be reduced: (1) whether Askari's offense involved "actual violence or a serious threat of violence"; and (2) whether Askari's criminal history indicates "a need to incarcerate the defendant or protect the public." See U.S.S.G. S 5K2.13.1 Before explaining our ratio decedendi, we will recapitulate the facts of the majority in our first en banc opinion.

I. Facts and Procedural History

A.

On the afternoon of April 23, 1992, Askari entered the First Bank of Philadelphia at 1424 Walnut Street in Philadelphia. He approached a closed teller's window and said two or three times, "Put the money on the counter." He then went to an open window and told the bank teller,

_____

1. "If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity . . . a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public."

Ellen Ishizaki, "You have three seconds to give me the money." After Ishizaki gave him bait money, he ran out the door. Askari was not seen carrying a weapon, nor did he use force or make specific verbal threats of harm, though when he demanded money from the teller he had his hand underneath his shirt. Two bank employees, along with a Center City Special District employee, all of whom were unarmed, chased Askari and caught him two blocks away. Police later found the bait money in Askari's pants. They did not recover a weapon. (See Presentence Report PP 5-8).

Askari was indicted for bank robbery under 18 U.S.C.A. S 2113(a), and a jury found him guilty. Before sentencing, the district court found that Askari was not mentally competent and committed him, under 18 U.S.C. S 4244(d), to a federal institution for psychiatric care and treatment.2 After the warden at the U.S. Medical Center for Federal Prisoners at Springfield, Missouri certified that Askari had recovered and was again mentally competent, the court sentenced him to 210 months in prison. (See App. at 58a, 68a).3 At sentencing, defense counsel argued for a

_____

2. Dr. Edward Guy examined Askari to assess whether he was competent to stand trial. Dr. Guy initially concluded that Askari was suffering from paranoid schizophrenia in partial remission, drug addiction, and a seizure disorder, but he concluded that Askari was competent to stand trial. Following a second psychiatric evaluation before Askari's sentencing, Dr. Guy testified that Askari was not competent. Noting Askari's "history of serious mental illness," Dr. Guy found Askari too delusional to be able to cooperate with his attorney. The district court then ordered Askari's commitment. After two years of treatment at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri, Askari was diagnosed as suffering from "Schizophrenia, Paranoid Type currently in remission with antipsychotic medication." The report noted that Askari initially "exhibited delusional thinking and auditory hallucinations," which improved with medication. The report concluded that Askari was now competent. (See App. at 62a-67a, 68a).
3. Askari qualified as "a career offender in that he was at least 18 years old at the time of the instant offense, the instant offense [was] a felony involving violence and the defendant [had] at least two prior felony convictions for crimes of violence." Presentence Report P 33. (See App. at 56a (district court noting, during sentencing, that Askari "has a long history of crime including violent crime . . . . the criminal history score in this case takes him pretty much to the top of the range" but concluding "[b]ecause I am satisfied that the low end of the sentencing range will provide a sufficient deterrent and punishment I am going to sentence him at the bottom of the range with the discretion I have")).

4

downward departure based on Askari's diminished mental capacity, citing his history of serious psychiatric illness and his diagnosis as a paranoid schizophrenic. That Askari suffered from some mental illness at the time he committed the bank robbery was not in dispute.

The district court, however, declined to grant the departure, explaining that the Sentencing Guidelines "contain a policy statement that a downward departure for diminished capacity is limited to non[-]violent offenses . . . . [The] commission says [there is] no downward departure for diminished capacity at the time of the offense, if the offense is a violent crime." (App. at 45a). The court also rejected defendant's motion for downward departure based on unusual, mitigating circumstances not adequately considered by the Guidelines.4

B.

Askari appealed his sentence, contending that the district court should have granted him a downward departure for diminished capacity under U.S.S.G. S 5K2.13 because (1) the unarmed bank robbery was non-violent; and (2) he has a well-documented history of serious psychiatric illness. A panel rejected Askari's arguments and affirmed the judgment:

> In United States v. Rosen, 896 F.2d 789, 791 (3d Cir. 1990), we held that the district court did not have the authority in a bank robbery sentence to depart downward because that offense is not a `non-violent' offense. We so concluded by looking to a separate guidelines provision, [USSG] S 4B1.2, which defines robbery as a `crime of violence.' Although the circuits are split on this point, we are bound by our prior holding.

_____

4. See U.S.S.G. S 5K2.0, p.s. (permitting the imposition of a sentence outside the range established by the Guidelines "if the court finds `that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described' ").

United States v. Askari, No. 95-1662, 1997 WL 92051, at *2
(3d Cir. Mar. 5, 1997) ("Askari I"), Order Vacating Opinion
and Granting Rehearing En Banc, Mar. 27, 1997.

The panel highlighted the disagreement among the courts
of appeals as to whether the "crime of violence" definition
contained in U.S.S.G. S 4B1.25 governs the "non-violent"
offense requirement of U.S.S.G. S 5K2.13:

> Four other circuits have reached the same conclusion
> that this court reached in Rosen. United States v.
> Mayotte, 76 F.3d 887, 889 (8th Cir. 1996); United
> States v. Poff, 926 F.2d 588, 591-93 (7th Cir. 1991) (en
> banc) (6-5 decision); United States v. Maddalena, 893
> F.2d 815, 819 (6th Cir. 1989); United States v. Borrayo,
> 898 F.2d 91, 94 (9th Cir. 1989). However, two circuits,
> following Judge Easterbrook's dissent in Poff, have
> concluded that the "non-violent offense" requirement of
> S 5K2.13 is not governed by the "crime of violence"
> definition contained in S 4B1.2. United States v.
> Weddle, 30 F.3d 532, 540 (4th Cir. 1994); United
> States v. Chatman, 986 F.2d 1446, 1450 (D.C. Cir.
> 1993).

Askari I, 1997 WL 92051, at *2 n.2.

In a concurring opinion, Judge Becker, recognizing our
controlling precedent in Rosen, suggested "that our decision
in Rosen, that a downward departure is not available under
S 5K2.13 of the sentencing guidelines in relation to a crime,
the commission of which involves no violence in fact, is
incorrect and should be reconsidered by the Court en
banc." Askari I, 1997 WL 92051, at *2 (Becker, J.,
concurring). According to Judge Becker:

> While `crimes of violence' and `non-violent offense'

_____

5. U.S.S.G. S 4B1.1 enhances the offense level for "career offenders." See
U.S.S.G. S 4B1.1, comment. (backg'd.) (28 U.S.C. S 994(h) "mandates
that the Commission assure that certain `career' offenders receive a
sentence of imprisonment `at or near the maximum term authorized.' "
U.S.S.G. S 4B1.1 implements this directive by employing a definition of
career offender that tracks in large part the criteria set forth in 28
U.S.C.
S 994(h)). U.S.S.G. S 4B1.2 provides definitions for terms used in USSG
S 4B1.1, including "crime of violence."

employ the same root word, the phrases `readily may take meanings other than as opposites.' More importantly, the distinct objectives of the two provisions at issue -- S 4B1.2 and S 5K2.13 -- counsel that the meaning of the former not govern that of the latter.

* * *

In short, some factors at work in the departure sections of the Guidelines are in tension with those at work under the career offender sections, and it does not make sense to import a career offender-based definition of `crime of violence' into a departure section in the absence of specific cross-reference. Rather, it is better to permit the district courts to consider all the facts and circumstances surrounding the commission of a crime when deciding whether it qualifies as a non-violent offense under S 5K2.13.

Id. at *4-6 (citations omitted).

Pursuant to the Internal Operating Procedures, the court voted to rehear the case en banc. We, therefore, vacated our panel decision (Askari I).

C.

After hearing argument, the en banc court was deeply divided. The majority, after an exhaustive analysis of the competing positions, determined that Rosen was incorrect and that the Sentencing Commission "did not intend to import the `crime of violence' definition from U.S.S.G. S 4B1.2 to U.S.S.G. S 5K2.13." United States v. Askari, No. 19-1662, Slip Op. at 21 (3d Cir. April 8, 1988) ("Askari II"). Instead, the majority concluded that:

We believe that departures under U.S.S.G. S 5K2.13 exclude conduct that involves actual force, threat of force, or intimidation, the latter two measured under a reasonable person standard. Therefore, "non-violent offenses" under U.S.S.G. S 5K2.13 are those which do not involve a reasonable perception that force against persons may be used in committing the offense.

7

> Although conviction and sentencing are separate, sentencing has always been tied to the crime of conviction at least in the sense that they must be congruent. If the elements of the crime require a finding of violent conduct, then a valid conviction could hardly permit a sentence based on a finding of non-violent conduct. So long as the bank robbery victim has been threatened with harm, and is seen to have been threatened under an objective standard (reasonable person), the defendant cannot be found to have acted in a non-violent manner.

Askari II, Slip Op. at 26. Relying on the testimony of Ms. Ishizaki, the bank teller, the majority found that

> an ordinary person in the bank teller's position reasonably could infer a threat of bodily harm from Askari's demand and actions. Looking at the elements of the crime and the surrounding conduct, Askari did not commit a "non-violent offense."

Id. at 27.

Judge Stapleton, joined by Judge Sloviter, concurred. Though agreeing that Rosen was incorrect and that Askari did not qualify for a S 5K2.13 departure, Judge Stapleton reached this result by a somewhat different route. See id. at 30 (Stapleton, J., concurring). Judge Stapleton would have held that Askari's bank robbery offense does not qualify as a "non-violent offense" because "a federal bank robbery conviction necessarily involves a finding that the offense involved actual force or a threat of force, and that such a finding . . . precludes characterization of the offense as a non-violent one for purposes of S 5K2.13." Id.

Judge McKee, joined by Judge Lewis, concurred as well. Like Judge Stapleton, Judge McKee agreed that Rosen should be rejected. However, Judge McKee believed that the majority incorrectly held that Askari's crime was not a "non-violent offense" based upon the elements of the crime, and would have required an "individualized inquiry into the specifics of his conduct to determine if his `actual conduct' amounts to a `non-violent offense' as that term is used in S 5K2.13 notwithstanding the elements of his crime." Id. at 36 (McKee, J., concurring). Still, Judge McKee joined in the

8

judgment, relying on the fact that S 5K2.13 is restricted to those persons whose criminal history does not indicate a need for incarceration to protect the public. See id. at 41. Since the district court had noted that Askari had a long history of crime, including violent crime, Judge McKee concluded that Askari would be ineligible for the departure regardless of whether his acts were classified as a "non-violent offense" because his criminal history suggests a need to protect the public. See id.

Judge Garth similarly agreed with the majority's judgment, but reached that conclusion for different reasons and wrote separately. Unlike the majority or the other concurrences, Judge Garth would not have overruled Rosen, and would instead construe "non-violent offense" as the opposite of "crime of violence" as that term is used in U.S.S.G. S 4B1.2. See id. at 42 (Garth, J., concurring).

Judge Becker, joined by Judges Nygaard and Roth, dissented. Though agreeing with the majority that Rosen was incorrect, the dissent contended that the majority erred by precluding sentencing judges from granting S 5K2.13 departures in bank robbery cases. Id. at 46, 51 ("Thus, under the majority's construction . . . Muhammad Askari could not qualify for a departure under S 5K2.13 regardless of the factual circumstances underlying his offense. To that end, the majority's `reasonable perception' standard does not save its opinion from being analytically identical to Rosen.") (Becker, J., dissenting). According to the dissent, the case should have been remanded to the district court so that the sentencing judge could consider all the facts and circumstances of the crime and decide in the first instance whether Askari's acts qualify as a "non-violent offense." See id. at 46.

The dissent also disagreed that Askari was ineligible for a S 5K2.13 departure because his criminal history suggests a need to protect the public. See id. at 53 n.5. The dissent reasoned that, while the district court did find that Askari had a long history of crime, it did not make an express finding about the need for incarceration to protect the public. See id. On that basis, the dissent contended that this question also needed to be decided by the district court in the first instance. See id.

D.

One day before our en banc opinion was filed, on April 7, 1998, the United States Sentencing Commission adopted an amendment to S 5K2.13, which revised that guideline to read as follows:

> A sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity. However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence, or (3) the defendant's criminal history indicates a need to incarcerate the defendant or protect the public. If a departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

U.S.S.G. S 5K2.13 (amendment proposed April 7, 1998) (emphasis added). Most importantly for present purposes, the amendment substituted the highlighted language in place of the "non-violent offense" requirement in the version of S 5K2.13 existing at the time Askari was originally sentenced and Askari I and Askari II were decided. See supra n. 1.

On April 20, 1998, Askari timely filed a petition for reconsideration of our en banc opinion based on this proposed amendment. He argued that the proposed amendment should be treated under our jurisprudence as a "clarifying amendment," which applies to the present case. On the merits, Askari contended that, under the proposed amendment, the question whether his offense indicates "a need to protect the public because the offense involved actual violence or a serious threat of violence" is properly for the district court to consider in thefirst instance on the basis of all the facts and circumstances of the offense.

10

The government filed an answer to the petition. It agreed with Askari that the proposed amendment is "clarifying." However, the government countered Askari's argument that a remand is necessary. Because a reasonable person could infer a threat of harm from defendant's actions, the government argued, Askari's threat of violence was "serious" and therefore even under the proposed amendment the S 5K2.13 departure should be precluded. Alternatively, the government contended that the defendant has a "long and violent criminal history," which precludes a departure under both the present and the amended versions of S 5K2.13.

The en banc court granted the motion for reconsideration. We wrote:

> A majority of the en banc court has voted to grant the motion for reconsideration, and hence it is hereby granted. However, the premise of the reconsideration is the Sentencing Commission's clarifying amendment to S 5K2.13 becoming operative. Since that event cannot occur until November 1, 1998 (the date by which Congress must act to prevent the amendment from taking effect), the court has decided to stay the mandate until that date, and it is hereby stayed. If Congress rejects the amendment, the original en banc opinion shall take effect and the clerk will issue the mandate accordingly. If Congress does not by November 1, 1998 act, the clerk shall enter an order formally vacating the opinion on the docket. The court will thereafter decide whether or not to remand the matter to the district court for further proceedings.

United States v. Askari, No. 95-1662, Order Sur Petition for Reconsideration of En Banc Opinion (3d Cir. Aug. __, 1998) (en banc) ("Askari III"). The November 1 deadline has now passed without congressional action, and the amendment to S 5K2.13 has therefore become effective.

II. Discussion

The parties agree that the amendment to S 5K2.13 does not work a substantive change in the law, but rather "clarifies" the Guideline in place at the time of sentencing.

11

Under our precedents, we therefore must give effect to the amended version in the present case. See United States v. Marmolejos, 140 F.3d 488, 490 (3d Cir. 1998). While the en banc court could conceivably revisit the case "from scratch," we have agreed that the better course, particularly in light of the sharp disagreements we have had over the meaning of a number of still relevant terms, is to remand to the district court so that it can resentence Askari in light of the Amended Guideline. In addition to possible legal interpretation, two factfinding issues remain in the wake of the amendment: (1) whether Askari's offense involved "actual violence or a serious threat of violence;" and (2) whether Askari's criminal history indicates "a need to incarcerate the defendant or protect the public." See S 5K2.13.

The first issue most likely still divides the court. Concomitantly, there may also be some disagreement whether this is an issue of fact or law. We think it preferable for the district court first to rule on the meaning of "serious threat of injury" within the context of the amended Guidelines. The second issue seems even more clearly to be an issue for the district court rather than the en banc court of appeals. The district court did not make an explicit finding of dangerousness vel non, perhaps because it found in light of Rosen that a downward departure for diminished capacity was limited to non-violent offenses (App. at 45a). The district court deserves another opportunity to make this determination.

For the foregoing reasons, the en banc opinion of this court, filed April 8, 1998, will be vacated, and the case remanded to the district court for further proceedings consistent with this opinion.

12

GARTH, Circuit Judge, dissenting:

In my opinion, despite the import of the new guidelines, the order of the district court should be affirmed. According to the newly enacted version of U.S.S.G. S 5K2.13, a diminished capacity departure is not warranted if "the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence." (emphasis added). Askari entered a bank on Walnut Street in Philadelphia on April 23, 1992 with his hand underneath his shirt so as to convey the impression that he was carrying a loaded gun that he was prepared to use. He repeatedly told the bank tellers to put the money on the counter, and told one teller that she had three seconds to give him the money. See United States v. Askari, 140 F.3d 536, 538 (3d Cir. 1998).

Askari's sentence should be affirmed without remand because his conduct involves a serious threat of violence. By conveying the impression that he was carrying a loaded gun and was prepared to use it, Askari created a serious threat of violence. Although his cocked forefinger was not likely to have led to much damage, an on-site law enforcement officer, a bank security officer, a bank patron, or even a bystander would have been justified in responding to Askari's actions through violent means. Askari's threat was a threat of violence, and raised a substantial possibility of violent conduct in response. Compare United States v. Hunn, 24 F.3d 994, 997, 997 n.5. (7th Cir. 1994) (holding that a bank robber who stated that he had a gun in his coat was eligible for two point enhancement for making a death threat even though robber was simply pointing his finger through his coat, and noting that whether he actually had a gun was "immaterial").

Accordingly, I see no need to remand this case to the district court, as Askari's actions and his undisputed felony background (see Maj. Op. at 4 n.2) must lead to the same sentence originally imposed. I respectfully dissent.

13

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit