

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-17-2003

# USA v. Hawkins

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-1672

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation
"USA v. Hawkins" (2003). *2003 Decisions.* Paper 200.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/200

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 02-1672

UNITED STATES OF AMERICA

v.

JAMES C. HAWKINS,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Crim. No. 00-cr-00416-1)
District Judge: Hon. Herbert J. Hutton

**ARGUED**
February 13, 2003

Before: ALITO and McKEE, <u>Circuit Judges</u>, and
SCHWARZER, <u>District Judge</u>[*]

(Opinion filed: October 17, 2003)

Robert Epstein, Esq. **(Argued)**
Defender Association of Philadelphia
Federal Court Division
Curtis Center, Independence Square West
Suite 540 West
Philadelphia, PA 19106
        *Attorney for Appellant*

Robert A. Zauzmer, Esq. **(Argued)**
Suite 1250
Sarah L. Grieb, Esq.

---

[*]The Hon. William W. Schwarzer, United States District Judge for the Northern
District of California, sitting by designation.

Office of United States Attorney
615 Chestnut Street
Philadelphia, PA 19106
    *Attorneys for Appellee*

OPINION

McKEE, Circuit Judge.

In his appeal, James C. Hawkins argues that the district court committed an error of law in denying his motion for a diminished capacity downward departure pursuant to U.S.S.G. § 5K2.13. We disagree. We conclude instead that the district court properly denied the departure. Accordingly, we will affirm.

**I.**

On July 19, 1999, Hawkins robbed the Prudential Savings Bank at 1834 Oregon Avenue in Philadelphia, Pennsylvania. He also attempted to rob the Mellon/PSFS Bank at 18 S. 52nd Street in Philadelphia. The first robbery occurred at approximately 9 a.m. Hawkins entered the Prudential Savings Bank, approached a teller, handed her a bag and told her to "[f]ill up the bag." Hawkins yelled, "Fill up the bag. I want $100,000." He then jumped over the counter, grabbed the teller and pulled her to the ground. Hawkins told everyone else to get down, and filled his bag with money from the teller's drawer. He then jumped back over the counter and left the bank with $22,538 in cash. As he drove away he threw what he believed to be a "dye pack" out of his car window.

He then drove to the Mellon Bank on S. 52nd Street where he climbed over the teller counter yelling: "Where are your keys?" The teller opened her drawer with her

2

keys as Hawkins kept telling the teller, "I'm not playing with you." Hawkins then went to the next teller and made her take money from her drawer. However, an off-duty Philadelphia Police Officer who happened to be using the bank's ATM machine heard someone say that the bank was being robbed, saw Hawkins behind the teller counter, and arrested him.

Following his arrest Hawkins was examined for competency and found not competent to stand trial. However, after being treated at a federal institution, Hawkins was subsequently reevaluated and found competent.

Thereafter, a federal grand jury returned a two-count indictment, charging Hawkins with bank robbery, in violation of 18 U.S.C. § 2113(a), and he pled guilty to that indictment pursuant to a plea agreement. As part of the plea agreement, Hawkins and the government agreed to disagree as to whether a downward departure was warranted under U.S.S.G. § 5K2.13.

Prior to sentencing, the government filed a sentencing memorandum opposing a downward departure for diminished mental capacity although the government agreed, for purposes of sentencing, that Hawkins suffered from reduced mental capacity. Nevertheless, it argued that Hawkins did not satisfy the conditions for such a departure under U.S.S.G. § 5K2.13.

Not surprisingly, Hawkins' sentencing memorandum asserted a different view under § 5K.13. His memorandum included reports of the psychiatric examinations.

3

Hawkins also took the stand and testified in support of his requested departure at his sentencing hearing. He admitted that he had jumped over the counter at the Prudential Bank and that the teller was scared. Although he denied pushing the teller, his denial contradicted other admissions he had previously made on the record. At his change of plea hearing, the government had presented the factual basis for the guilty plea. In doing so the prosecutor stated:

> Christie Lamanna (ph), teller, Prudential Savings Bank . . . would testify that on July 19, 1999, she was working as a teller at the bank. Shortly after 9:00 a.m. a black male approached her station, handed her a white plastic CVS bag and told her to fill it up. The branch manager, Joanne Valentino (ph), went to Ms. Lamana's teller station asking if she could help him, and he responded by yelling, "Fill up the bag, I want $100,000." The individual then jumped over the counter, grabbed Ms. Lamanna's shirt and pulled her to the ground. The individual told everyone in the teller area to get down and the individual asked another teller, Elana Melardini (ph), asked her where the money was. Ms. Melardini pointed to her drawer, opened the drawer, filled the bag with the money, and the individual then jumped over the counter and left the bank.

App. at 131a. Following this summary, the court had asked Hawkins: "Mr. Hawkins, do you understand and agree to the facts of the crimes as stated by the Assistant United States Attorney?" App. at 115a, 134a. Hawkins had responded, "Yes, I do." App. at 134a.

In addition, at his sentencing, Hawkins also acknowledged under oath that he had told the truth at his change of plea hearing. App. at 158a. Moreover, the Presentence

4

Report ("PSR") also stated that Hawkins jumped over the counter, grabbed the teller's shirt and pulled her to the ground, PSR ¶ 10, and Hawkins did not object to that portion of the PSR at the sentencing hearing.

The district court was fully informed about Hawkins' mental condition and treatment. The evidence before the court included Hawkins's statement to one of the doctors examining him for a mental disorder that he had sought medical treatment at the Veteran's Administration Hospital prior to committing the bank robberies, but had never followed through with any treatment. Hawkins had been medicated with Zyprexa and he claims that the Zyprexa kept him from being jumpy and from hearing voices. However, at one point, Hawkins also stated that he did not know why he was taking this medication. One of the doctors who examined Hawkins stated:

> Mr. Hawkins must stay on his medication and remain in treatment whatever his legal disposition. He is non-psychotic with the medication, although he was a bit disoriented to date when I saw him. . . . Treatment will be long term and will need to consist of both monitoring his behavior as well as insuring his taking the medication on a regular basis.

App. at 76a.

The government also introduced the testimony of bank teller, Christie Lamana at the sentencing hearing. She testified that on the day of the robbery, she was at her desk when Hawkins approached. At first, she did not understand Hawkins and asked her manager for assistance. When Lamana came back to her station, Hawkins jumped onto and over the counter, grabbed Lamana and pushed her to the ground. Hawkins then went

5

into a teller drawer and took the money. He jumped back over the counter and left. Lamana was on the ground crying while Hawkins was stealing the money from her drawer. She testified that she felt seriously threatened by Hawkins. The government also presented three surveillance photographs which depicted Hawkins at Lamana's counter, jumping over her counter, and taking money from the teller drawer.

The district court considered all of the evidence, including Hawkins's testimony, and denied Hawkins's motion for a diminished mental capacity downward departure. It found that "the standard has not been met and therefore I must deny the departure. . . ." App at 170a. When asked which prong of § 5K2.13 was not met, the district court responded, "The serious, the threat." App. at 174a. The district court then sentenced Hawkins to seventy-seven months imprisonment,[1] followed by three years of supervised release. Hawkins was also ordered to pay a $200 special assessment.

This appeal followed.

## II.

A sentencing court can depart from a defendant's guideline range if the defendant committed the charged offense while suffering from a significantly reduced mental capacity;[2] provided that none of the following conditions exist:

---

[1]Hawkins's sentencing range under the Sentencing Guidelines was 77 to 96 months. PSR ¶ 80.

[2]As noted above, the government conceded for sentencing purposes that Hawkins suffered from reduced mental capacity.

6

> (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicated a need to protect the public because the offense involved actual violence or a serious threat of violence; or (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public.

U.S.S.G. § 5K2.13.  A defendant has the burden of proving entitlement to a departure by a preponderance of the evidence.  *United States v. McBroom*, 124 F.3d 533, 539 (3d Cir. 1997).

The district court found that Hawkins was not eligible for a departure because of the second prong of § 5K2.13; the offense involved "a serious threat of violence." Hawkins argues that the district court erred as a matter of law in denying his request for a diminished capacity departure pursuant to § 5K2.13(2) for two reasons.[3]  First, he argues that it is not enough to preclude granting the departure based only on a "serious threat of violence."  Rather, a "serious threat of violence" precludes a diminished capacity departure only if the serious threat indicates a "need to protect the public."  Second, he argues that the district court misinterpreted the phrase "serious threat of violence."

Hawkins claims that the district court must make two separate factual findings before it can deny a diminished capacity departure under the second prong of § 5K2.13.

---

[3]We exercise plenary review of alleged sentencing errors based upon a mistake of law or an incorrect application of the Sentencing Guidelines.  *United States v. Torres*, 251 F.3d 138, 145 (3d Cir. 2000).  However, where a district court correctly construes a guideline, its findings of facts are reviewed for clear error.  *United States v. Vitale*, 159 F.3d 810, 816 (3d Cir. 1998).

7

In his view, a "serious threat of violence" does not necessarily indicate a "need to protect the public." Therefore, a district court must find a "serious threat of violence" and it must find a "need to protect the public." According to this view, the district court is justified in denying the departure only when both of these constituent parts of the second prong are found as facts by the district court. He cites our decision in *United States v. Askari*, 159 F.3d 774 (3d Cir. 1998), to support this position.

At the outset, we note that Hawkins never raised this issue before the district court. Therefore, his claim is reviewed only for plain error. *United States v. Knight*, 266 F.3d 203, 206 (3d Cir. 2001). However, there is no plain error here and *Askari* does not support Hawkins's argument.

In *Askari*, we reconsidered whether the defendant, who had been convicted of bank robbery, qualified for a diminished capacity departure. At the time we reconsidered the issue, § 5K2.13 had recently been amended. Under the old version, courts were required to determine

> [i]f the defendant committed a non-violent offense while
> suffering from significantly reduced mental capacity, . . . .
> provided that the defendant's criminal history does not
> indicate a need for incarceration to protect the public.

*Askari*, 159 F.3d at 775 n.1. As noted above, under the new version of the guidelines, courts must determine

> if the defendant committed the offense while suffering from a
> significantly reduced mental capacity. However, the court
> may not depart below the applicable guideline range if (1) the

8

significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicated a need to protect the public because the offense involved actual violence or a serious threat of violence; or (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public.

U.S.S.G. § 5K2.13.   Because we found that the new version was a clarifying amendment, we remanded to the district court to make additional factual findings which it had not made under the old version. *Askari*, 159 F.3d at 780.

Hawkins correctly notes that we remanded so that the district court could make additional findings on the issue of "whether Askari's criminal history indicates 'a need to protect the public." *Id.* (citing § 5K2.13).  Given that we remanded this issue for determination, he argues that because the new version contains the "need to protect the public" language in both the second and third prongs of § 5K2.13, a district court is required to make the same type of "need to protect the public" determination with respect to "a serious threat of violence."

However, Hawkins conveniently ignores that we also remanded for factual findings as to "whether Askari's offense involved 'actual violence or a serious threat of violence.'" *Id.*  Thus, while we did find that the controlling inquiry in the third prong of § 5K2.13 was whether the defendant's criminal history indicates a need to incarcerate the defendant to protect to public, it is clear that we found that the controlling inquiry under the second prong of § 5K2.13 focuses on whether the defendant's offense involved

9

"actual violence or a serious threat of violence." There is nothing in *Askari* that requires a district court to parse out the "need to protect the public" language from the "actual violence or a serious threat of violence" language and make a separate factual finding on each issue.

Hawkins' second argument is that the district court misinterpreted the phrase "a serious threat of violence." He contends that the district court found that his bank robbery involved "a serious threat of violence" based solely on his admission that the bank teller appeared frightened of him. But, claims Hawkins, the mere fact that the bank teller was frightened of him does not mean that there was "a serious threat of violence." Rather, he contends that several courts have held that the focus of the inquiry should be on whether the defendant had the intention and capability of carrying through on the threat. As an example, he cites to *United States v. McFadzean*, 1999 WL 1144909 (N.D. Ill Dec. 8, 1999). There, the district court found that the defendant's bank robbery did not involve a serious threat of violence, even though the defendant handed the teller a note which read, "I have a gun and want $3,000 don't try to touch nothing." *Id.* at *5. The district court believed that there was no serious threat of violence because "the threat was an empty one[, the defendant] had no weapon and no means to harm anyone." *Id.*

However, here, nothing in the record indicates that the district court limited its finding of a serious threat of violence to Hawkins' statement that the teller was frightened. Moreover, this case is unlike a case where an unarmed bank robber presents a

10

demand note to a teller without using any actual force. In his first robbery, Hawkins jumped over the teller counter, grabbed the teller's shirt and violently pushed her to the ground. In his second robbery, he also jumped over the counter in a menacing manner and was halted only when an off-duty police officer arrived on the scene with his weapon drawn. Given this record, we can not conclude that the district court committed plain error in denying the requested departure for diminished mental capacity.

## III.

For all of the above reasons, we will affirm the sentence.

TO THE CLERK OF THE COURT:

Please file the foregoing Opinion.

/s/ Theodore A. McKee
Circuit Judge

11