

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-11-2007

# USA v. Askari

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3051

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Askari" (2007). *2007 Decisions.* Paper 1329.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1329

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-3051

———————

UNITED STATES OF AMERICA

v.

MUHAMMAD ASKARI,
                                    Appellant

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Crim. No. 92-cr-00288
District Judge:  The Honorable Ronald L. Buckwalter

———————

Submitted Under Third Circuit LAR 34.1(a)
March 27, 2007

———————

Before: RENDELL, BARRY, and CHAGARES, <u>Circuit Judges</u>

(Opinion Filed:  April 11, 2007)

———————

OPINION

———————

BARRY, <u>Circuit Judge</u>

    This is an appeal from the District Court's order denying Appellant Muhammad

Askari's motion for relief, pursuant to 28 U.S.C. § 2255, on the ground of ineffective

assistance of counsel.  Because we find that Askari has not demonstrated that his trial counsel rendered ineffective assistance by failing to pursue an insanity defense, we will affirm.

## I.

On April 23, 1992, Askari entered the First National Bank of Philadelphia at 1424 Walnut Street, approached a teller, and demanded money.  The teller complied by giving Askari bills that included $50 in "bait money," and Askari fled on foot.  Bank employees pursued and apprehended him a short distance away, finding the "bait money" in his trousers.

On May 1, 1992, a federal grand jury sitting in the Eastern District of Pennsylvania returned an indictment, charging Askari with one count of bank robbery, in violation of 18 U.S.C. § 2113(a).  The following week, Dr. Edward Guy evaluated Askari, pursuant to 18 U.S.C. § 4241, to determine whether he was competent to stand trial.  In a report dated May 11, 1992, Dr. Guy noted that Askari, a Vietnam veteran, had a history of psychological problems and treatment, but concluded that he was competent to stand trial subject to periodic reevaluation.  The District Court accepted the report's conclusion and, on June 4, 1992, accepted Askari's plea of not guilty.  A trial date was set for July 8, 1992.

On June 30, 1992, Askari, through his counsel, moved for a second psychiatric evaluation.  The government consented, and Dr. Timothy J. Michals examined him on July 2, 1992.  Based on Dr. Michals's observations and his review of Askari's medical

2

records, Dr. Michals concluded that Askari was competent to stand trial, and so stated at a July 8, 1992 competency hearing. He testified that Askari's complaint of memory loss was "selective," inconsistent with known characteristics of mental disorders, and inconsistent with the results of past evaluations. (Appellant's App. vol. II at A-179, A-181.) He also testified that Askari's past psychological problems were attributable primarily to drug abuse, but noted that he had been diagnosed with post traumatic stress disorder and personality disorder. In response to questioning by the Court, Dr. Michals opined that Askari's complaint of hearing voices was inconsistent with other aspects of his mental condition, and, therefore, "self serving and not based on a mental disease or defect." (*Id.* at A-190.)

Askari testified. On direct examination, he recalled certain information, such as the names of the medications he was taking and how long he had been in custody, but did not know what crime he was charged with committing and could not recall being arrested. On cross-examination, he testified that he occasionally heard voices.

> Q    What do they tell you?
> A    They tell me Uncle Sam wants me to go back in the service. I don't want to go. They try to draft me, the Government is trying to draft me back in the Army. I'm too old to go to the service, I'm too old to go to the Gulf War. I want the VA out of my life.
> Q    Have they told you anything about a bank robbery?
> A    No.

(*Id.* at A-198.) In response to the Court's questioning, Askari testified that he did not know the purpose of the proceeding and asserted, "I need treatment though, Judge." (*Id.* at A-200.) After he left the stand, his counsel conceded that his testimony certainly . . .

3

does not negate Dr. Michals' opinion." (*Id.* at A-201.) She noted, however, that Askari had provided her with no information about the case and had consistently denied any recollection of robbing a bank.

The District Court found Askari competent to stand trial. Jury selection began later that day. On July 10, 1992, after a two-day trial, the jury returned a guilty verdict.

On January 16, 1993, in advance of his sentencing hearing, Askari moved for a third psychiatric evaluation. The Court held a hearing on the motion on February 12, 1993. At the hearing, defense counsel noted that Askari had refused to take his medication since January 20 and continued to complain about hearing voices. The Court then heard conflicting testimony from Dr. Catherine Barber, a forensic psychologist at the Federal Correctional Institution in Fairton, New Jersey, where Askari was detained, and Dr. Guy, who interviewed Askari for 20 minutes that day. Dr. Barber testified, in reference to a report she had prepared on January 29, that Askari "meets even the most stringent standards to be considered competent to refuse treatment." (*Id.* at A-220.)[1] Dr. Guy, on the other hand, believed that Askari was not competent to proceed with sentencing. The District Court concluded that Askari "just barely" proved by a

---

[1] She also read a portion of a report prepared by one of FCI Fairton's consulting psychiatrists, Dr. Goldberg, who evaluated Askari on February 11, 1993 and diagnosed him as having either chronic undifferentiated schizophrenia or chronic paranoid schizophrenia. In response to a question from the Court as to whether a person could have such a diagnosis and still be able to understand the nature and consequences of a legal proceeding in which he or she is a party and adequately assist his or her lawyer, Dr. Barber answered, "Yes, unquestionably." (Appellant's App. vol. II at A-235.)

preponderance of the evidence that he was not competent to be sentenced. (*Id.* at A-271.) Accordingly, the Court ordered that he be committed to a federal institution for psychiatric care and treatment, pursuant to 18 U.S.C. § 4244(d), for a term of 20 years or until such time as the director of the institution certified, pursuant to 18 U.S.C. § 4244(e), that he was competent to be sentenced.

Askari was committed to the U.S. Medical Center for Federal Prisoners at Springfield, Missouri. There, on January 18, 1995, Staff Psychiatrist Shalini Gavankar, M.D., reported that he was no longer in need of treatment and could be sentenced. The warden filed a certification to that effect with the District Court, and the Court, on July 27, 1995, sentenced Askari to 210 months' imprisonment followed by three years of supervised release, giving credit for the 40 months already served.

Askari timely appealed his sentence, arguing that the District Court had authority to grant a downward departure for diminished capacity pursuant to U.S.S.G. § 5K2.13. We affirmed, finding that the diminished capacity departure was unavailable because bank robbery is a crime of violence. *United States v. Askari*, No. 95-1662, 1997 WL 92051, at *2 (3d Cir. Mar. 5, 1997). We then granted rehearing en banc, and, on April 8, 1998, affirmed. *United States v. Askari*, 140 F.3d 536, 550 (3d Cir. 1998) (en banc). In light of a proposed amendment to § 5K2.13, however, we granted Askari's petition for reconsideration. On November 5, 1998, we vacated our April 8, 1998 en banc opinion and order and remanded to the District Court for factual findings on whether Askari's offense involved actual violence or a serious threat of violence, and whether his criminal

history indicated a need to incarcerate him or protect the public. *United States v. Askari*, 159 F.3d 774, 780 (3d Cir. 1998) (en banc).

After several continuances, the District Court resentenced Askari on November 14, 2001. The Court granted his § 5K2.13 motion and reduced his sentence to 140 months' imprisonment and three years of supervised release. Neither party appealed.

Meanwhile, on May 20, 1997, while his direct appeal was pending, Askari filed a *pro se* motion pursuant to 28 U.S.C. § 2255 seeking to overturn a 1975 conviction that affected his sentence this case. In a memorandum order dated April 22, 1998, the District Court adopted the report and recommendation of a magistrate judge, denied Askari's motion, and denied a certificate of appealability.

On August 15, 2002, Askari filed a second *pro se* § 2255 motion, this time urging the District Court to overturn his sentence because his trial counsel had been ineffective in several respects. At the Court's direction, he refiled his motion on December 26, 2002, using the appropriate forms. In both filings, Askari argued that that his trial counsel was ineffective for failing to pursue an insanity defense. On March 19, 2004, the District Court dismissed his motion as a second or successive § 2255 habeas corpus motion. In an order dated July 14, 2004, however, the District Court vacated its March 19, 2004 order and denied Askari's motion on the merits.

Askari timely appealed. On October 19, 2005, we granted a certificate of appealability with regard to his claim that trial counsel was ineffective for failing to pursue an insanity defense.

## II.

In January 2003, Askari finished serving his prison term and began his three-year period of supervised release. On August 26, 2004, the District Court found that he had violated the conditions of his supervised release. The Court revoked supervised release, ordered Askari to be imprisoned until September 9, 2004, and ordered that supervision be terminated upon his release. Thus, he is neither incarcerated nor under supervision at this time. The Supreme Court has established a presumption that a wrongful criminal conviction has continuing collateral consequences. *See Spencer v. Kemna*, 523 U.S. 1, 8 (1998) (citing *Sibron v. New York*, 392 U.S. 40, 55-56 (1968)). The government does not attempt to rebut this presumption. We find that Askari's appeal is not moot.

We have jurisdiction pursuant to 28 U.S.C. §§ 2253 and 1291. Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a prisoner seeking relief for ineffective assistance of counsel must make two showings: first, that counsel's assistance fell below an objective standard of reasonableness for attorneys in criminal cases; and second, that counsel's deficient performance prejudiced the defense. Each prong presents a mixed question of law and fact. *Id.* at 698. We exercise plenary review of the District Court's adjudication of the performance and prejudice prongs, *Duncan v. Morton*, 256 F.3d 189, 200 (3d Cir. 2001), and we review the District Court's underlying factual findings for clear error, *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1430 (3d Cir. 1996).

The Insanity Defense Reform Act of 1984 ("IDRA"), 18 U.S.C. § 17 (2000), defines the standard that a defendant must prove by clear and convincing evidence to

7

establish insanity as a defense to a federal prosecution.

> (a) Affirmative defense.--It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.
> (b) Burden of proof.--The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

Although we have not yet addressed the clear and convincing standard in the context of the IDRA, there can be no question that proof by clear and convincing evidence is a more stringent standard than proof by a preponderance of the evidence. *See United States v. Brennan*, 326 F.3d 176, 200 n.7 (3d Cir. 2003); *see also United States v. Massey*, 27 M.J. 371, 372 (1989) ("[A]n accused can prevail only if he convinces the factfinder that he was not mentally responsible at the time of the crime; and it does not suffice that he merely creates a reasonable doubt in the mind of the factfinder as to his mental responsibility."). In a slightly different context, the Supreme Court of New Jersey has supplied a useful definition of clear and convincing evidence as that which

> produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

*In re Jobes*, 529 A.2d 434, 441 (N.J. 1987) (internal quotation marks omitted). The Pennsylvania Supreme Court has similarly defined clear and convincing evidence as evidence sufficient to "enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. . . . It is not necessary that the evidence

be uncontradicted . . . provided it 'carries conviction to the mind' or carries 'a clear conviction of its truth'. . . ." *In re Adoption of J.J.*, 515 A.2d 883, 886 (Pa. 1986) (citations omitted).  We find these definitions appropriate here.

A different, and, in some respects, less stringent standard exists for demonstrating legal competence.  A defendant is not competent to stand trial if he suffers from a mental disease or defect that renders him "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(a).  Under our caselaw, the government bears the burden of proving by a preponderance of the evidence that a defendant is competent to stand trial.  *United States v. Valasquez*, 885 F.2d 1076, 1089 (3d Cir. 1989); *cf. Cooper v. Oklahoma*, 517 U.S. 348, 355 (1989) (noting that a state may presume a defendant's competence and require him to prove otherwise by a preponderance of the evidence).

By comparison, a downward departure for diminished capacity under § 5K2.13 of the United States Sentencing Guidelines, which were mandatory at the time of Askari's 2001 resentencing, may be appropriate where a court finds that the defendant, at the time of the offense, suffered from a "significantly reduced mental capacity" that "contributed substantially to the commission of the offense."  The application note to § 5K2.13 defines "significantly reduced mental capacity" as "a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."  U.S.S.G. § 5K2.13 cmt. 1.

9

Against this backdrop, we turn, first, to the prejudice prong of the *Strickland* standard. Where the defendant has failed to establish prejudice, we need not reach the issue of counsel's performance. *See Rolan v. Vaughn*, 445 F.3d 671, 678 (3d Cir. 2006); *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002). To satisfy the prejudice prong of the *Strickland* analysis, Askari must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Outten v. Kearney*, 464 F.3d 401, 414 (3d Cir. 2006) (quoting *Strickland*, 466 U.S. at 694). A reasonable probability in this context is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Askari has failed to demonstrate a reasonable probability that, but for counsel's alleged error, he would have shown by clear and convincing evidence that he was unable to appreciate the nature and quality or the wrongfulness of his acts at the time he committed the bank robbery. He points to the conclusions of Drs. Goldberg and Guy, who evaluated him on February 11 and 12, 1993, respectively, after he had been refusing his medication for several weeks. Dr. Goldberg diagnosed Askari as suffering either from undifferentiated schizophrenia or chronic paranoid schizophrenia, and Dr. Guy opined that Askari was not competent to proceed with sentencing. Neither psychiatrist opined as to Askari's mental state at the time of the bank robbery, which occurred nearly ten months earlier. Indeed, as circumstantial evidence of Askari's mental state at the time of the crime, Dr. Guy's February 12, 1993 opinion is further called into question by his opinion of May 11, 1992, just eighteen days after the robbery, that Askari was "alert and

10

cooperative" and competent to proceed to trial.  (Appellant's App. vol. II at A-143.)

Askari also notes that his counsel reported to the District Court, on July 8, 1992, that Askari had not provided her with any information about the case since she first met with him on April 24, 1992.  She made this statement, however, in response to the Court's suggestion that Askari was feigning some of his symptoms; she declined to express an opinion as to whether Askari's reticence was deliberate.  By comparison, the District Court repeatedly suggested, at the July 8, 1992 hearing and again at the February 12, 1993 hearing, that, "based on the Court's own observations," it believed that Askari was "faking and trying to manipulate people."  (*Id.* at A-210.)  Even apart from the other evidence in the case, given the Court's observations, trial counsel's assertion that Askari had not assisted her surely does not show that he was legally insane when he committed the crime.

Askari, finally, points to two reports prepared on August 11, 1999 and August 10, 2000 by Dr. Julie B. Kessel, a psychiatrist retained by the defense to render an opinion as to Askari's ability to proceed with resentencing.  In her August 10, 2000 report, Dr. Kessel rendered several opinions, including the following:

> On the day of the incident for which Mr. Askari was arrested, he was suffering from a major mental illness with active symptoms of psychosis, such that his mental capacity was substantially impaired.  Further, as a result of his mental illness, he had a substantially impaired capacity to appreciate the wrongfulness of his behavior, to exercise the power of reason, and to conform his conduct to the requirements of the law.

(*See* Appellant's Supplemental App. at A-284.)  As the government correctly observes,

11

this was the first psychiatric report to address Askari's state of mind at the time of the offense.  Askari cites Dr. Kessel's opinion as evidence that on the day of the bank robbery, he was legally insane.

Dr. Kessel met with Askari once in July 1999 and again in February 2000, and prepared her August 10, 2000 report more than eight years after the bank robbery.  Her opinions, therefore, do not carry the same weight as would an opinion rendered closer to the date of the crime.  Even if they did, however, they do not establish or even suggest that Askari was legally insane when he committed the crime.  Dr. Kessel's opinion that Askari had "substantially impaired capacity to appreciate the wrongfulness of his behavior" tracks the standard for a downward departure for diminished capacity under the Sentencing Guidelines.  *See* U.S.S.G. § 5K2.13 & cmt. 1.  It does *not* satisfy the requirement for legal insanity that the defendant be "*unable* to appreciate the nature and quality or the wrongfulness of his acts."  18 U.S.C. § 17(a) (emphasis added); *see United States v. Pohlot*, 827 F.2d 889, 890 (3d Cir. 1987) (noting that defenses such as diminished responsibility and diminished capacity do not negate *mens rea* and are prohibited by the IDRA).  Accordingly, there is no evidence that would produce in the mind of a trier of fact a clear, unhesitating conviction that Askari was legally insane at the time of the robbery.

Askari no doubt has a long history of psychological illness for which he has, at various times, been treated clinically.  It would require a leap of logic, however, to conclude from this record that at the time he robbed the First National Bank of

12

Philadelphia, he "was unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17(a). At no point in these lengthy proceedings has an expert so opined. It is therefore doubly a stretch to conclude that Askari has demonstrated a reasonable probability that, but for counsel's alleged unprofessional errors, the result of his trial would have been different. Having failed to prove that he has been prejudiced, Askari's claim for ineffective assistance of counsel also fails.

### III.

For the foregoing reasons, we find that Askari has failed to demonstrate that he is entitled to relief under 28 U.S.C. § 2255 on the ground of ineffective assistance of counsel. We will affirm.